MEMPHIS PUBLISHING COMPANY, d/b/a the Commercial Appeal and Dan Henderson, Appellees,

v.

John D. HOLT, Director of the City of Memphis Police Department; Memphis Police Department; and the City of Memphis, Tennessee, Appellants.

Supreme Court of Tennessee, at Jackson.

May 12, 1986.

Clifford D. Pierce, Jr., City Atty., E. Brady Bartusch, Deputy City Atty., Memphis, for appellants.

Walter P. Armstrong, Jr., Jon P. McCalla, S. Russell Headrick, Armstrong, Allen, Braden, Goodman, McBride and Prewitt, Memphis, for appellees.

W.J. Michael Cody, Atty. Gen. and Reporter, Andy D. Bennett, Asst. Atty. Gen., Virginia J. Barham, Asst. Atty. Gen., Nashville, for amicus curiae.

Richard L. Hollow of McCampbell & Young, Knoxville, amicus curiae for Tennessee Press Ass'n.

William L. Parker, Jr., Metropolitan Atty., Nashville, amicus curiae for Tennessee Ass'n of Chiefs of Police.

Arzo Carson, Director, Nashville, amicus curiae for Tennessee Bureau of Investigation.

## OPINION

COOPER, Justice.

This appeal presents the issue of whether the closed investigative file of the Memphis Police Department is available for inspection by the media and the public under T.C.A. § 10–7–503 of the Public Records Act. Both lower courts held that it is, and we affirm.

The file sought to be examined is that of the "Shannon Street Incident" of January 11–12, 1983. Two police officers were called to the residence of Linberg Sanders, 2239 Shannon Street, Memphis, Tennessee. A confrontation occurred between the officers and the occupants of the residence. One officer was taken hostage. The other was seriously wounded but escaped capture. Approximately thirty hours later, police officers stormed the residence. In the shoot-out, seven occupants of the residence were killed. The hostage police officer also was found dead.

The Memphis Police Department immediately began an investigation of the "Shannon Street Incident." Information resulting from the investigation was released to the public in two news conferences held by the police department in January, 1983.

In November, 1984, a reporter for *The Commercial Appeal* sought to inspect the closed investigative file. When he was denied access to the file, a formal demand was made on the police department by *The Commercial Appeal.* It too was denied. *The Commercial Appeal* then filed a petition in the Chancery Court of Shelby County seeking access to the "Shannon Street Incident" file. In the course of the court proceeding, it was brought out that the police investigation had been completed and the file closed, and that no proceedings relative to the "incident" were pending in any criminal court, and none were contemplated. There were two pending civil suits based on the "Shannon Street Incident."

T.C.A. § 10–7–503 opens all state, county, and municipal records and records maintained by the Tennessee performing arts center management corporation for personal inspection by any citizen of Tennessee, "unless otherwise provided by state statute." In addition the statute grants authority to the head of a governmental entity to promulgate rules in accordance with the Tennessee Uniform Administrative Procedures Act "to maintain the confidentiality of records concerning adoption proceedings or records required to be kept confidential by federal statute or regulation as a condition for the receipt of federal funds or for participation in a federally funded program." Other than these two voiced limitations, full access to governmental records is granted every citizen of Tennessee.

Procedure for enforcing this right of access is set forth in T.C.A. § 10–7–505. Where a citizen seeks the aid of the chancery court in obtaining access to governmental records, the state places the burden of proving justification for the denial of access upon the official that denied access. *See* T.C.A. § 10–7–505(c). The legislature also imposed the requirement that the court, in ruling on a petition for access to governmental records, make written findings of fact and conclusions of law, and granted the court the power "to exercise full injunctive remedies and relief to secure the purposes and intentions of this section." T.C.A. § 10–7–505(d). In the same section of the statute the legislature also

directed the court to broadly construe the access-to-records statute "so as to give the fullest possible public access to public records." T.C.A. § 10–7–505(d).

In this case the trial judge found no justification for the denial of access to the investigative file on the "Shannon Street Incident," and the majority of the Court of Appeals agreed with that finding.

Appellants and amici curiae make a three-pronged attack on the holding of the trial court and the Court of Appeals. They insist (1) that an investigative file prepared by a municipal police department is not within the purview of T.C.A. § 10–7–503, (2) that the file is excepted from the effect of the statute by the provisions of T.C.A. §§ 40–15–106 and 40–32–101 (the expungement statutes) and Rule 16 of the Tennessee Rules of Criminal Procedure, and (3) that the disclosure of such a file is contrary to public policy of this state.

The fundamental rule of statutory construction is to ascertain and, if possible, give effect to the intention or purpose of the legislature as expressed in the statute. *Worrall v. Kroger Co.*, 545 S.W.2d 736 (Tenn.1977). In determining this legislative intent or purpose, "the courts are restricted to the natural and ordinary meaning of the language used by the Legislature within the four corners of the statute, unless an ambiguity requires resort elsewhere to ascertain legislative intent." *Austin v. Memphis Publishing Co.*, 655 S.W.2d 146, 148 (Tenn.1983).

■ We find no ambiguity in the statute. In our opinion the holding of the Court of Appeals that the records sought in this case are "records" within the purview of T.C.A. § 10–7–503, comports with the language of the statute and is consistent with the legislative directive in T.C.A. § 10–7–505(d) that the access statutes be construed "so as to give the fullest possible public access to public records." It is also consistent with the interpretation placed on the statute by the court in *Board of Education v. Memphis Publishing Co.*, 585

S.W.2d 629 (Tenn.Ct.App.1979). *See also Cleveland Newspapers, Inc. v. Bradley County Mem. Hosp. Bd. of Dirs.*, 621 S.W.2d 763 (Tenn.Ct.App.1981).

T.C.A. § 10–7–503 grants access to all state, county, and municipal records not excepted by state statute or, with very limited application, by rules properly promulgated by the head of a governmental entity. T.C.A. § 10–7–504 identifies several classes of records not subject to inspection by citizens of this state. Included are investigative files of the Tennessee Bureau of Investigation and the Motor Vehicle Enforcement Division of the Department of Safety, and the books, records and other materials in the possession of the Attorney General. Municipal police department investigative files are not listed. Neither are they included in the numerous statutes classifying described records as being confidential.[1]

Recognizing that investigative records of municipal law enforcement agencies are not specifically excluded from the all encompassing act opening governmental records to public inspection, appellants and amici curiae argue that the expungement statutes (T.C.A. §§ 40–15–106(b) and 40–32–101(b), by implication, except investigative files of law enforcement agencies from the statute. We find no merit in this argument. The language in both the expungement statutes and the criminal rule limits their application to situations outside the facts of this case.

The two expungement statutes contain identical language:

Public records, *for the purpose of expunction only*, shall not include arrest histories, investigative reports, intelligence information of law-enforcement agencies, or files of district attorneys general that are maintained as confidential records for law enforcement purposes and are not open for inspection by members of the public. (emphasis supplied)

1. Twenty-six such statutes are set forth in the    cross-references to T.C.A. § 10–7–504.

The definition of "public records" contained in the expungement statutes is limited to "the purpose of expunction only." There has been no expunction order entered that is relevant to the records sought in this case. The argument by amici curiae that the limiting language in the statute is a "non-functional phrase," is contrary to the basic rule of statutory construction that all words of a statute must be given meaning, if possible. *See Tennessee Growers, Inv. v. King,* 682 S.W.2d 203 (Tenn.1984). Further, as pointed out by counsel for appellee,

> [T]he statute does not presuppose that investigative files are confidential.... The statute merely acknowledges that the described documents may be maintained by law-enforcement agencies and district attorneys general for further investigative purposes after an expungement order is entered. To protect against further disclosure of personally identifying information of defendants whose records have been expunged, the statute mandates that the records maintained for future reference 'are maintained as confidential records for law enforcement purposes and are not open for inspection by members of the public.'

Rule 16(a)(2) of the Tennessee Rules of Criminal Procedure, also relied upon by appellants as creating an exception by implication to the Tennessee Public Records Law, emphasizes that the disclosure granted the State and defendant "does not authorize the discovery or inspection of reports, memoranda, or other internal State documents made by ... State agents or law enforcement officers in connection with the investigation or prosecution of the case, ..." By definition this limitation on access to records applies only to discovery in criminal cases. *See* Rule 1, TRCP. The investigative file sought to be examined in this case is a closed file, and is not relevant to any pending or contemplated criminal action. Rule 16, therefore, does not come into play in this case.

Appellants argue that a ruling that municipal law enforcement investigative files are subject to public inspection under T.C.A. § 10-7-503 is so contrary to public policy that the courts should imply an exception for such files. It is the prerogative of the legislature to declare the policy of the State touching the general welfare. *Baptist Memorial Hospital v. Couillens,* 176 Tenn. 300, 311-12, 140 S.W.2d 1088, 1092-93 (1940). And where the legislature speaks upon a particular subject, its utterance is the public policy of the state upon that subject. *Cavender v. Hewitt,* 145 Tenn. 471, 475, 239 S.W. 767, 768 (1922). When T.C.A. § 10-7-503 was passed by the 1957 Legislature, it provided that "[a]ll state, county and municipal records" shall be open for inspection "unless otherwise provided by law or regulations made pursuant thereto." In 1984 the legislature amended the statute to provide that "[a]ll state, county and municipal records" shall be open for inspection "unless otherwise provided by state statutes." By this amendment the legislature reserved to itself alone the power to make public policy exceptions to T.C.A. § 10-7-503 for municipal law enforcement files. "Where ... the intent of the Legislature appears clear upon consideration of the natural and ordinary meaning of the statutory language, it is not the office of this Court either to extend or limit that language's import, regardless of how we may perceive the equities of the cause." *Overman v. Overman,* 570 S.W.2d 857 (Tenn.1978).

Further, and in support of their public policy argument, appellants urge this court to find that T.C.A. § 10-7-505 provides for a "balancing of interests" test to be applied by Tennessee courts in determining if a particular file is subject to inspection under T.C.A. § 10-7-503. T.C.A. § 10-7-505 does not limit the scope of T.C.A. § 10-7-503, nor does it give the courts leeway to exempt records from public inspection. It does no more than provide an enforcement mechanism to gain access to governmental records opened to the public by T.C.A. § 10-7-503. When the two sections are read together, it is evident that a public official can justify refusing a

Tennessee citizen access to a governmental record only by proving by a preponderance of the evidence that the record in controversy comes within a statutory exemption. Since there is no statute exempting the file in controversy in this case, the appellees have the right to inspect the file.

The judgment of the Court of Appeals is affirmed. The case is remanded to the trial court for enforcement of the judgment. Costs of the appeal will be paid by appellants.

BROCK, C.J., and FONES, HARBISON and DROWOTA, JJ., concur.